Good morning. First is Lababit. Your Honor, for the record, Adam Karp. I'm here with Mr. Zauber. There are three primary issues this morning. The first is whether this court should certify to the Washington Supreme Court the question of whether a pure default judgment that has not been vacated because the period within which the debtor can seek to vacate the award has lapsed constitutes inexcusable neglect and converts, or essentially ripens, an otherwise pure default judgment into one that carries with it preclusive effect. Or to find that the admitted failure of the debtors here to even attempt to vacate the default or the default judgment allows this court to apply the estoppel sanction, the estoppel by default sanction. What case law is there in Washington? What's the closest cases? Your Honor, the closest case I'm familiar with would be Little v. King, where the Washington Supreme Court decided four years ago really the contours of what constitutes an appropriate default judgment and whether it will have any type of binding effect. And there, the Supreme Court upheld a multimillion dollar default award against the defendant. Unfortunately, the Supreme Court did not go further to address what happens when that one year period provided by CR 60B elapses without any action by the debtor. What we have here, undisputedly, is that a default was entered in August of 2006, a default judgment a few months later in November 2006. And although a Chapter 7 bankruptcy was filed in May of 2007, the court would agree, I would hope, that merely filing a Chapter 7, while it would stay enforcement activity on attempting to satisfy a judgment, does not in any sense vacate that judgment. Other than the Daley case, which seems somewhat not on point because it involved a party that actually did litigate and then was sanctioned, is there any case supporting your proposed rule that unless you try to vacate a default judgment, it would have preclusive effect? Is there anything in Washington law? Unfortunately, I'm not aware of such a case. But what we do know is that the Washington courts have treated default judgment as, in essence, a punitive type sanction because of the inexcusable failure of the debtor to involve him or herself in court process. So it would seem that if a year elapses without any action by the debtor to vacate, it would have to have some ripening effect to that judgment. Otherwise, it would render CR 60 a nullity. There would be no point to imposing that one-year time limit. So the bankruptcy courts, and we have some cases say, well, although Washington hasn't precisely ruled on this issue, they take a very conservative approach. In our read of the cases is it would not, default judgments don't have a preclusive effect. Are there cases on the other side, do you think they're misreading the Washington court? I mean, obviously you do. But what's the best cases to say that they're misreading the conservative approach the Washington courts have taken? I don't think they're misreading it. I just think that the approach taken by the Washington courts really ends the inquiry at the point where we're beginning the question of whether failure to vacate has some additional sanctionable effect. I guess I would begin by comparing this matter to the In re Bigelow case, which the BAP did cite. And In re Bigelow, back in 2001, involved a case where the attorney debtor, Mr. Bigelow, did attempt and, in fact, succeed in vacating the default. Now, granted, the Court of Appeals reversed that later. But it's important, I think, to focus on the distinction between Bigelow in this case in that respect. And there are other respects as well. There were no factual findings made by the state court in the default judgment against Mr. Bigelow, whereas there were here. And furthermore, what wasn't presented by the matter of Bigelow was the need to preserve substantial rights and do justice between the parties when there is a failure to take steps to vacate a default. I can say that in Washington courts, even if a defendant comes forward and successfully vacates a default judgment, in many cases, courts will award some type of sanction or terms based on that, even if they prevail in upending that default judgment. What evidence did you put on in support of your request for a judgment? Well, Your Honor, that wasn't part of the record in the bankruptcy court. But I did bring with me a rather substantial ex parte motion for default judgment, which I can pass up. But it includes several declarations, legal analysis, and so forth that substantiates the award. In fact, I even referenced other decisions, other judgments that had been entered concerning animal injury and death. So we did have a hearing. Mr. Zalper was present. Ms. Pugh was present. The court asked us some questions at that time. So it wasn't just a rubber stamping type of proceeding. Was he put under oath? I honestly, I don't recall. I believe so. This was five or six years ago. But I would suspect if the court asked him questions, that would have been protocol. The second issue is emotional distress damages. While the BAP was accurate in reversing Judge Glover in awarding $1 for the purported value of Milton, the court cited Pickford. This was a Division II case that found that, in fact, intrinsic value is a potentially appropriate measure for the death of a companion animal. And two years later, Division III, the Womack versus Von Raerden case, where a cat was set on fire, Division III recognized, citing Pickford and the intrinsic value principles in Pickford, that there is an emotional connection between people and their pets. And that to recognize that there would be an emotional harm arising from the malicious injury to someone's pet would be cognizable. So it seems that the BAP just didn't take the next necessary step of tying together the emotional increment of loss along with the economic. I would note that the circuit decided the San Jose Hells Angels case in 2005, where law enforcement executed a warrant on Hells Angels compounds. They knew dogs were there. But the only step they took to neutralize the dogs is to kill them if they got in the way. This circuit decided and found that the connection between a person and his or her animal has an emotional dimension to it that is utterly unlike, say, possessory interests and furniture. So I think that animals can be treated as property sui generis in this respect. And this leads us to the final request. I admit, I don't know what the standard of review is for the request to publish a BAP decision. You asked the BAP to publish their opinion? Yes. And what did they say? They denied it. They denied it. And I would, to be frank, the likelihood that Mr. Zapparai will recover a penny from Mr. LeBabbitt or Mrs. LeBabbitt is slim to none. And what we have here is an opportunity to really extend the common law, federal common law, or state common law, to align with the evolution of the understanding of Americans and their relationship to their animals, to recognize that if someone willfully, maliciously kills someone's animal, that that is a loss for which there should be something more than $1 in market value and $0 in emotional distress. There are also important issues concerning acts of omission, such as the in-ray patch court found in the Eighth Circuit. Surprisingly, the Ninth Circuit appeared to align with that decision. And so it is a matter of first impression, which would be of utility to future litigants. Let me ask you, what was the evidence for emotional distress? The emotional distress evidence, Your Honor, consisted of Mr. Zapparai's testimony, subject to, I think, certain objections that were made, some of which I believe were sustained, as well as a declaration that he filed as an offer of proof. And Ms. Pugh, a close friend and also the investigator and former law enforcement who testified to her observations of Mr. Zapparai. At the time of the incident. That's correct. I should note that I think that part of the difficulty here was that Judge Glover was assessing this case based on outrage principles, which were never raised. In Washington, you can recover emotional distress damages absent any medical evidence or objective symptomatology if it's non-negligent. That's the Birchler case, timber trespass, 100 years of cases. And also, per WOMAC, you don't even need to prove severe emotional distress or a specific intent to cause severe emotional distress as you would an outrage. When there's a willful or malicious destruction. But the court didn't say that he wasn't entitled to emotional distress damages as a matter of law, right? He just said it wasn't shown here. Yes, that's true. But then we're butting up against a finding that Judge Glover did make where he did find that Mr. Zapparai. Mr. Zapparai is very straightforward and candid, a rather private individual. But I think we're not disturbing that finding, of course, on appeal here. But Judge Glover did find that he did leave work, I think, for several days and did have some appreciable distress. Now, you'll note that Judge Glover acknowledged that he hadn't sought medical treatment, which is irrelevant. But he did acknowledge there was some distress. Is that worth zero? Seems that there should be some award for that. In his explanation, he talks about intentional infliction of emotional distress, which can be a tort in and of itself. Correct. That isn't the tort of intentional infliction of emotional distress or outrage was not an issue here and is not something that's within the contours of 523A6. We have willful and malicious injury to a pet, and we have conversion. Those are the solid claims upon which emotional distress damages would arise. OK, thank you. Thank you very much. The matter will be submitted at this time. Our next case for argument is United States v.
judges: Fletcher B. , Paez, Ikuta